## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **LARRY WATSON,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | **Case #4:18-cv-00057-DN-PK** |
| **v.** | **District Judge David Nuffer** |
| **UTAH HIGHWAY PATROL, et. al.,** | **Magistrate Judge Paul Kohler** |
| **Defendants.** | |

On April 18, 2019, District Court Judge David Nuffer referred the above entitled matter to Magistrate Judge Paul Kohler pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Under Judge Nuffer's referral, the following motions are currently pending:  (1) Defendants Barton Blair, Shawn Hinton, Chris Terry, and Alex Garcia's Motion to Dismiss filed December 19, 2018;[2] and (2) Defendant Dan Ferguson's Motion to Dismiss, filed April, 22, 2019.[3]  Plaintiff filed a Response to Defendants Blair, Hinton, Terry, and Garcia's Motion to Dismiss on March 13, 2019.[4] Defendants Blair, Hinton, Terry, and Garcia filed a Reply to Plaintiff's response on March 27, 2019.  Plaintiff filed no response to Defendant Garcia's Motion to Dismiss, which made no new arguments but adopted the arguments and reasons identified in his co-defendants motion to dismiss.[5]

---

[1] (ECF No. 80).

[2] (ECF No. 28).

[3] (ECF No. 79).

[4] (ECF No. 60).

[5] (ECF No. 79).

## BACKGROUND

Late in the evening on May 7, 2015, in St. George, Utah, Defendant Trooper Chris Terry stopped Plaintiff after Plaintiff drove past Exit 4 on I-15 and crossed the "gore" line.[6]  When Trooper Terry contacted Plaintiff, the Trooper smelled burnt marijuana coming from Plaintiff's vehicle and asked Plaintiff, "when was the last time you smoked or were around marijuana?"[7]  Plaintiff responded, "You can't smell marijuana, you smell my dog's butt."[8]  During the subsequent investigation, however, Plaintiff handed Trooper Terry a burnt marijuana joint,[9] admitted the marijuana was his,[10] and admitted to smoking marijuana the previous evening.[11]  He further admitted to taking Oxycontin that afternoon and Percocet less than two hours before the traffic stop.[12]  Trooper Terry administered field sobriety tests (FSTs) to Plaintiff which showed indicia of impairment[13] and arrested Plaintiff for Driving Under the Influence (DUI) and

---

[6] Dash-Cam Video, 23:13:00 attached as Exhibit 1 to Defs Mot. to Dismiss (ECF 28-1); Police Report, Bates Nos: UHP DEFS 000003, and 5, attached to Defs Mot. to Dismiss as Exhibit 2 (ECF 28-2).  Plaintiff's Amended Complaint references the Dash-Cam Video and Police Report as exhibits to his Amended Complaint, although he failed to attach them.  *See* e.g. Pla.'s Am. Compl., ¶¶ 7-8, 12-13, 16, 18.  "[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). Further, "when a document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[7] Ex. 1, Dash-Cam Video, 11:15:47-51; Ex. 2, Police Report, Bates No. 000005.

[8] *Id.*

[9] Ex. 1, Dash-Cam Video, 11:19:15; Ex. 2 Police Report, Bates No. 000005, 000015.

[10] Ex. 1, Dash-Cam Video, 11:20:12.

[11] *Id.*

[12] *Id.* at 11:26:05.

[13] *Id.* at 11:32:15; Ex. 2, Police Report, Bates Nos. 000003-4.

possession of marijuana.[14]  Trooper Terry then transported Plaintiff to the Washington County

Jail in his K-9 unit vehicle.[15]  Plaintiff later complained to Trooper Terry's supervisors that

Trooper Terry's police report was contradicted by the dash-cam video.[16]  Plaintiff now sues

defendants, in their individual and official capacities, alleging state-law torts and constitutional

claims, ADA claims, § 1983 claims, conspiracies, and allusions to violations of various state and

federal criminal statutes, and even international treaties.  Defendants seek dismissal of Plaintiff's

Amended Complaint pursuant to Fed. R. Civ. P. 8 and 12(b)(6).

### RULE 12(b)(6) STANDARD

In reviewing a Rule 12(b)(6) motion to dismiss, the court assumes the truth of well-

pleaded facts and draws reasonable inferences in a light most favorable to the plaintiff. *E.g.*,

*Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).  Conclusory pleadings,

however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009).  A claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584

F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (quoting *Iqbal*, 556 U.S. at 678).  Threadbare recitals of elements, facts "merely consistent"

with liability, "labels and conclusions," or "unadorned, the defendant-unlawfully-harmed me

accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 at 554, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178,

---

[14] *Id.* at 11:40:45.

[15] *Id.* at 11:47:49.

[16] Pla.'s Am. Compl., ¶¶ 26-31 (ECF 21).

1184-85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

## ANALYSIS

### I.      Plaintiff's State-Law Claims Are Untimely

Plaintiff alleges numerous state-law torts, including negligent and intentional infliction of emotional distress,[17] defamation,[18] and kidnapping.[19]  He also alleges violations of various provisions of Utah's Constitution, including Article I, Secs. 1, 3, 7, 9, 11 and 14.[20]  Plaintiff's state-law claims are untimely.

#### A.  Plaintiff's State-Law Tort Claims (Counts 3, 8, 11)

Plaintiff failed to file his complaint within the time-period provided by the Governmental Immunity Act of Utah (the "GIA").  Under the GIA, a person having a claim against a governmental entity, or against its employee must file a notice of claim before initiating suit. Utah Code Ann. § 63G-7-401.  The notice of claim must be filed within one year after the claim arises.  Utah Code Ann. § 63G-7-402.  A claim that is not approved or denied within sixty days of receipt is considered denied.  Utah Code Ann. § 63G-7-403.  Once the claim is denied the claimant has one year to commence an action.  *Id.*

---

[17] Pla.'s Am. Compl., p. 7.  References to page numbers in Plaintiff's Amended Complaint are to the page numbers assigned by the Courts Case Management/Electronic Case Files system.

[18] *Id*. at p. 8.

[19] *Id.* at p. 11.  Although styled as kidnapping, this cause of action is correctly characterized as the tort of false imprisonment.  *See Tiede v. State*, 915 P.2d 500, 503 (Utah 1996).

[20] Pla.'s Am. Compl., pp. 3, 6-17.

Plaintiff argues that the GIA's time limit for filing suit violates the open courts clause found at Article I, Section 11 of the Utah Constitution.[21]  None of the cases cited by Plaintiff, however, hold that the GIA's time limits are unconstitutional.  Further, the Utah Supreme Court has stated that the GIA's filing requirements "dictate the timeliness of a claim asserted against the government."  *Craig v. Provo City,* 389 P.3d 423, 429 (Utah 2016).  Thus, "a claim filed outside the time limits set forth in the [GIA] is time-barred."  *Id.* at 429.

The events which form the basis of Plaintiff's state-law tort claims happened on May 7 and 8, 2015.[22]  Plaintiff filed a notice of claim on or about March 10, 2016.[23]  Pursuant to the GIA, Plaintiff should have initiated this lawsuit no later than one year and sixty days after the filing of the notice of claim, or on or before May 9, 2017.  Plaintiff filed this suit filed on September 6, 2018, more than a year late.  Plaintiff's state-law tort claims accordingly, should be dismissed with prejudice.

### B.  Plaintiff's Utah Constitutional Claims (Counts 1-2, 4, 6, 7-8, 11, 13-17)

To the extent Plaintiff's claims for violations of the Utah Constitution are not untimely under the GIA, they are barred by Utah's two-year statute of limitations for causes of action "against a marshal, sheriff, constable, or other officer for liability incurred during the performance of the officer's official duties."  Utah Code Ann. § 78B-2-304(1).

Plaintiff raises the open courts clause a second time to protest the application of the statute of limitations to his claims under the Utah Constitution.[24]  As with his arguments

---

[21] *Id.*

[22] *Id.* at ¶ 11.

[23] *See* Declaration of Roberta Woodruff, attached to Defendant's Motion to Dismiss as Exhibit 3 (ECF 28-3); Notice of Claim attached to Defendant's Motion to Dismiss Exhibit 4 (ECF 28-4).

[24] *Id.* at p. 7.

concerning the GIA, none of the cited authorities hold that the statute of limitations violates the open courts clause.  Plaintiff also suggests that the filing of his notice of claim on March 10, 2016 satisfied the statute of limitations.[25]  Plaintiff cites no authority for this proposition. Plaintiff's claims for violations of the Utah Constitution should have been brought on or before May 8, 2017 and should be dismissed with prejudice.

## II.   Plaintiff's ADA Claim Fails (Count 10).

Plaintiff alleges that Trooper Terry violated the ADA by placing Plaintiff in the small back seat of a K-9 unit vehicle.[26]

### A.  Individual Capacity ADA Claim.

Plaintiff cannot sue Trooper Terry in his individual capacity under the ADA.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.A. § 12132.  "Only public entities are subject to Title II."  *City and Cty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015).  The Tenth Circuit has held "that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."  *Butler v. City of Prairie Vill., Kan.,* 172 F.3d 736, 744 (10th Cir. 1999). *See also, Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) ("We hold that the [ADA] does not provide for individual liability, only for employer liability."); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the

---

[25] *Id.*

[26] Pla.'s Am. Compl., ¶¶ 6, 22.

ADA.").  Plaintiff's individual capacity ADA claims accordingly should be dismissed, with prejudice.

### B.  Reasonable Accommodation Claim

While Plaintiff may be able to bring a Title II ADA claim against the Utah Highway Patrol, Plaintiff's Amended Complaint fails to state such a claim.  The Tenth Circuit has recognized that Title II might require that police make reasonable accommodations when disabled individuals are arrested.  *J.H. ex Rel. J.P. v. Bernalilllo Cty.,* 806 F.3d 1255 (10th Cir. 2015).  To prevail on such a theory, however, a plaintiff must plead facts showing both officials' "knowledge of the individual's disability and the individual's need for an accommodation." *Robertson v. Las Animas Cty. Sheriff's Dept.,* 500 F.3d 1185, 1196-97 (10th Cir. 2007).  Public officials are on notice of the need for accommodation when the individual requests an accommodation or the need for accommodation is obvious.  *Id.*  Neither of these circumstances apply here.  The only accommodations Plaintiff requested were to be handcuffed in front of his body[27] and to sit sideways in Trooper Terry's vehicle while Terry finished the investigation.[28] Trooper Terry honored both of these requests.[29]  When Plaintiff did ask to sit sideways in the vehicle, he prefaced that request with by asking "can we get going so I can stretch my leg out," indicating to Trooper Terry he wanted to get underway in Trooper Terry's vehicle.[30]  There is no request to be transported in a different vehicle on the dash-cam and there is no allegation in

---

[27] *Id.* at 11:35:44.

[28] *Id.* at 11:48:45.

[29] *Id.* at 11:35:44; 11:48:45.

[30] *Id.* at 11:48:45.

Plaintiff's Amended Complaint that he made that request.[31]  Further, Plaintiff's need for an accommodation was not obvious.  For example, Plaintiff was perfectly capable of sitting in his own vehicle.[32]  Further, the dash-cam video plainly reveals Plaintiff standing, walking, even removing and replacing his shoes.[33]  Absent the pleading of facts from which the Court can infer that Trooper Terry knew that Plaintiff needed to be transported in a different vehicle, Plaintiff's ADA claim fails and should be dismissed, with prejudice.

### III.    Plaintiff's Federal Constitutional Claims Fail

Plaintiff's federal constitutional claims similarly fail.

### A.  Plaintiff's Official Capacity Claims Fail (All Counts)

Plaintiff's official capacity claims for federal civil rights violations are barred by Eleventh Amendment Immunity.  Official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham,* 473 U.S. 159, 165-166 (1985), (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978)).  Suits against state officials in their official capacities are therefore treated as suits against the state and are barred by the Eleventh Amendment.  *Hafer v. Melo,* 502 U.S. 21, 25 (1991).

The sole applicable exception to the Eleventh Amendment's bar to official capacity lawsuits for civil rights violations is found in the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908).  Under *Ex Parte Young*, a plaintiff may bring a complaint that alleges "an ongoing

---

[31] This case is distinguishable from *Barnes v. Gorman*, 536 U.S. 181, 122 S.Ct. 2097 (2002). Gorman's disability (paraplegia requiring a wheelchair and a urine catheter) was obvious. Gorman also vociferously objected to being removed from his wheelchair for transport.  *Id.*

[32] Ex. 1, Dash-Cam, 11:14:24.

[33] *Id.* at 11:36:47—11:38:21.

violation of federal law and seeks relief properly characterized as prospective." *Buchheit v. Green,* 705 F.3d 1157, 1159 (10th Cir.2012) (brackets and internal quotation marks omitted). Additionally, the complaint must show "some connection" between the named state official and the enforcement of a challenged state law. *Cressman v. Thompson*, 719 F.3d 1139, 1146, n. 8 (10th Cir. 2013). Actions seeking to "address alleged past harms rather than prevent prospective violations of federal law" are not properly categorized as prospective. *Buchheit*, 705 F.3d at 1159.

Plaintiff characterizes his Amended Complaint as a "suit in equity"[34] and seeks an injunction to "shut down the Utah Highway Patrol."[35] However, he has not properly alleged an *Ex Parte Young* claim. He has not identified any ongoing violation of federal law. The relief he seeks is not prospective or remedial. Rather, he seeks to punish the Utah Highway Patrol as redress for what happened to him. These claims do not state an *Ex Parte Young* claim and his official capacity § 1983 claims should be dismissed.

### B. Defendants Entitled to Qualified Immunity on Individual § 1983 Claims

Qualified immunity shields government officials who perform discretionary functions from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (citations and quotations omitted). When a state official asserts qualified immunity, he creates a rebuttable presumption that he is immune from the plaintiff's § 1983 claims. *See Medina v. Cram,* 252 F.3d 1124, 1129 (10th Cir. 2001). The Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who

---

[34] Pla.'s Am. Compl., ¶ 4.

[35] *Id.* at p. 19.

knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1985).  Qualified immunity may be denied only if, on an objective basis, it is obvious that no reasonably competent official would have concluded that the actions were constitutional.  *Gomes*, 451 F.3d at 1134.  But, "if [officials] of reasonable competence could disagree about the lawfulness of the challenged conduct, then [qualified] immunity should be recognized." *Id.* at 1136 (internal quotations omitted).

Two elements exist in the qualified immunity analysis--first, whether, under facts alleged by the plaintiff, the government officials violated a constitutional right; and second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2008).  If the plaintiff fails to satisfy any part of the qualified immunity inquiry, "the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).  "Once the qualified immunity defense is asserted, the plaintiff initially "bears a heavy two-part burden" of showing that the alleged conduct "violated a constitutional or statutory right" and that the right was clearly established at the time of the conduct at issue." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (citations and quotations omitted).

"For the law to be clearly established, [t]he contours of " the constitutional right at issue must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Perry v. Durborow*, 892 F.3d 1116, 1122–23 (10th Cir. 2018) (citations and quotations omitted).  A plaintiff generally only satisfies this requirement when the plaintiff "(1) identif[ies] an on-point Supreme Court or published Tenth Circuit decision, or (2) shows the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Id.* at 1123 (citations and quotations omitted).  The Supreme Court has repeatedly

held that courts should not "define clearly established law at a high level of generality."

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotations omitted).  Rather, the

dispositive question is "whether the violative nature of *particular* conduct is clearly established."

*Id.*  The rule must be defined with enough specificity that it is "clear to a reasonable officer that

his conduct was unlawful in the situation he confronted."  *D.C. v. Wesby*, 138 S. Ct. 577, 590

(2018) (citations and quotations omitted).

### i.      Plaintiff's Conspiracy Claims (Counts 14-17)

Plaintiff's Complaint fails to plead sufficient facts to state a § 1985(3) conspiracy.[36]  The

elements of a § 1985(3) conspiracy are: "(1) a conspiracy; (2) to deprive plaintiff of equal

protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4)

an injury or deprivation resulting therefrom."  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.

1993) (citations and quotations omitted).  To state a conspiracy, Plaintiff must "allege specific

facts showing an agreement and concerted action amongst the defendants."  *Tonkovich v. Kansas*

*Bd. of Regents,* 159 F.3d 504, 533 (1998).  Further, "§ 1985(3) does not "apply to all tortious,

conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated

by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  *Tilton*, 6

F.3d at 686. (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)).  Finally, a § 1986

claim "depends on the existence of a valid claim under § 1985."  *Wright v. No Skiter Inc.*, 774

F.2d 422, 426 (10th Cir. 1985).

---

[36] Defendants and the Court interpret Plaintiff's Complaint to allege § 1985(3) and § 1986
conspiracies.  However, to the extent Plaintiff claims a § 1983 conspiracy those claims fail as
well because Plaintiff has not alleged facts showing agreement and concerted action between
Defendants.

Plaintiff has not alleged any agreement or "meeting of the minds" between Defendants. *Hunt v. Bennet*, 17 F.3d 1263, 1268 (10th Cir. 1994).  Further, the Complaint contains no allegations from which the Court could infer that the alleged conspiracy was motivated by racial or class-based discriminatory animus.  Plaintiff's Amended Complaint fails to state a claim for a § 1985(3) conspiracy.

Plaintiff argues that the conspiracy alleged in his complaint is an obstruction of justice conspiracy under 42 U.S.C. § 1985(2).[37]  Subsection 1985(2) provides a cause of action where "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."  42 U.S.C. § 1985(2).

Plaintiff's § 1985(2) conspiracy claim fails for the same reasons as his § 1985(3) conspiracy.  He has failed to allege specific facts showing an agreement and concerted action to obstruct justice amongst the defendants.  *Tonkovich,* 159 F.3d at 533.  Further, Plaintiff's § 1985(2) claim, like his § 1985(3) claim requires some allegation of racial, or class-based, invidiously discriminatory animus.  *Smith v. Yellow Freight System, Inc.,* 536 F.2d 1320, 1323 (10th Cir. 1976) (citing *Griffin v. Breckenridge*, 403, U.S. 88, 91 S.Ct. 1790 (1971)).  Plaintiff fails to plead any facts satisfying this element and accordingly his § 1985 and 1986 claims must be dismissed.

---

[37] Pla.'s Resp. to Mot. To Dismiss, pp. 17-18.

### ii.      First and Second Amendment Violations (Counts 1, 2, 4, 8, 14-17)

Plaintiff repeatedly alleges that Trooper Terry violated his First and Second Amendment rights.[38]  Plaintiff, however, pleads no facts from which the Court can infer plausible First or Second Amendment claims.  Any claims asserted in Plaintiff's Complaint for a violation of the First or Second Amendments should be dismissed.

### iii.      Miranda Violation

Plaintiff's allegations that Trooper Terry failed to give him a Miranda warning[39] do not state a claim.  "[T]he law in this circuit is clear that the only remedy available for a *Miranda* violation is the suppression of any incriminating evidence."  *Haulman v. Jefferson Cty. Sheriff Office,* 15 F. App'x 720, 721 (10th Cir. 2001) (citing *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976)).  Plaintiff concedes that there is no such § 1983 claim.[40]  Plaintiff's claims based on Trooper Terry's alleged failure to Mirandize him should be dismissed with prejudice.

### iv.      Sixth and Ninth Amendment Claims (Counts 8-10, 13-17)

Plaintiff argues that his arrest violated the Sixth and Ninth Amendments. [41]  Trooper Terry did not violate the Sixth Amendment.  The charges against Plaintiff were plainly spelled out on the summons and citation.[42]  Trooper Terry served Plaintiff with the citation and explained it to him.[43]  Finally, "[S]ection 1983 civil rights claims premised on

---

[38] *See e.g.* Pla.'s Compl., ¶¶ 4, 11.

[39] *Id.* at ¶ 17.

[40] Pla.'s Resp. to Defs.' Mot. to Dismiss, p. 18.

[41] *Id.* at pp. 4, 10-11, 13, 18.

[42] Ex . 2, Bates UHP DEFS 000002.

[43] *Id.* at Bates UHP DEFS 000005.

the Ninth Amendment" are not cognizable "because there are no constitutional rights secured by that amendment. *P.J. ex rel. Jensen v. Utah*, 2006 WL 1702585, at *11 (D. Utah June 16, 2006) (unpublished) (citing cases). These claims are frivolous and should be dismissed with prejudice.

>    **v.    The Search of Plaintiff's Vehicle (Count 4)**

Trooper Terry did not violate Plaintiff's Fourth Amendment rights when he searched Plaintiff's vehicle. The Tenth Circuit "has long recognized that marijuana has a distinct smell and that the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle." *United States v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991). "If an officer smells marijuana in the passenger compartment of a vehicle, he has probable cause to search the passenger compartment." *Id.* (citing *United States v. Loucks,* 806 F.2d 208, 209–10 n. 1 (10th Cir.1986)). An officer also has probable cause to search the entire vehicle when the officer detects the odor of burnt marijuana and its occupant hands marijuana to the officer. *United States v. Bradford,* 423 F.3d 1149, 1160 (10th Cir. 2005). Finally, the Tenth Circuit has not "held or implied that the presence of confounding smells defeat a probable cause determination." *Abbo v. Wyoming*, 596 Fed.Appx. 709, 712 (10th Cir. 2014).

In this case, Trooper Terry smelled the odor of burnt marijuana emanating from Plaintiff's vehicle.[44] Further, Plaintiff handed Terry a burnt marijuana joint upon exiting the car and prior to Trooper Terry's search of the vehicle.[45] At that point Trooper Terry had probable

---

[44] Ex. 1, Dash Cam, 11:15:45; Ex. 2, Police Report, Bates No. 000005.

[45] Ex. 1, Dash-Cam, 11:19:15; Ex. 2, Police Report, Bates No. 000005.

cause to search the entire vehicle for contraband.  Finally, the presence of Plaintiff's dachshund

does not defeat probable cause.[46]

Plaintiff repeatedly claims that Terry did not smell burnt marijuana[47] and that Trooper

Terry lied in his police report because, "once the facts were known, there was no weed."[48]

Plaintiff's arguments are undone by the facts.  Within eighty seconds of contacting Plaintiff,

Trooper Terry asked him directly "when was the last time you smoked or were around

marijuana?"[49]  Plaintiff's argument that there was "no weed" is patently false.  Plaintiff handed

Terry "a roach"[50] that Trooper Terry described as "[a] burnt marijuana joint."[51]  The roach was

further described in a lab report as a "green leafy substance rolled in white paper with a burnt

end" that tested positive for marijuana.[52]  Plaintiff's argument that Terry could not have smelled

burnt marijuana is further undercut by Plaintiff's act of handing burnt marijuana to Terry.[53]

Finally, Plaintiff's argument that Trooper Terry could not smell a small marijuana roach[54] misses

the point.  What Trooper Terry smelled was not the joint; Trooper Terry smelled the aromatic

evidence that Plaintiff and/or his wife had been smoking it.

---

[46] *Abbo*, while unpublished is highly persuasive authority for the proposition that a search based
on the aroma of marijuana, even in the presence of odors from Plaintiff's dog, did not violate
clearly established law.  *See Grissom v. Roberts, et al.*, 902 F.3d 1162, 1168 (10th Cir. 2018*)*
(unpublished opinion provides little support for the notion that the law is clearly established, but
"can be quite relevant in showing that the law was not clearly established").

[47] *Id.* at p. 1.

[48] *Id.*

[49] Ex. 1, Dash-Cam, 11:15:47—11:15-51.

[50] Ex. 1, Dash-Cam, 11:19:15.

[51] Ex. 2, Police Report, Bates No. 000012

[52] *Id.* at Bates No. 000015.

[53] Ex-1, Dash-Cam Video, 11:19:15.

[54] Pla.'s Resp. to Defs.' Mot. to Dismiss, p. 2.

Plaintiff attempts to avoid *Bradford*'s holding by calling it a "bad ruling."[55]  This

argument does not meet Plaintiff's burden to show a violation of clearly established law.  *Perry*

892 F.3d at 1122-23.  Defendants are entitled to qualified immunity on the search of Plaintiff's

car and that claim should be dismissed with prejudice.

vi.     **Plaintiff's Arrest (Count 6)**

Plaintiff's false arrest claim fails because Plaintiff's arrest was supported by probable

cause.  "If an officer has probable cause to believe that an individual has committed even a very

minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest

the offender."  *Atwater v. Lago Vista*, 532 U.S. 318, 322, (2001); *Wilder v. Turner*, 490 F.3d 810,

813 (10th Cir. 2007) ("When a warrantless arrest is the subject of a § 1983 action, the defendant

is entitled to qualified immunity if probable cause existed to arrest the plaintiff.").  "'Probable

cause exists if facts and circumstances within the arresting officer's knowledge and of which he

or she has reasonably trustworthy information are sufficient to lead a prudent person to believe

that the arrestee has committed or is committing an offense.'"  *Johnson v. Lindon City Corp.*,

405 F.3d 1065, 1068 (quoting *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir.

1988)).  Thus, even law enforcement officials who reasonably but mistakenly conclude that

probable cause is present are entitled to immunity."  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th

Cir. 1995) (citations and quotations omitted).  This is because "[p]robable cause only requires a

probability of criminal activity, not prima facie showing of such activity."  *Wilder*, 490 F.3d at

813.  And, "[a]n arrest is not invalid under the Fourth Amendment simply because the police

officer subjectively intended to base the arrest on an offense for which probable cause is lacking,

---

[55] *Id.* at p. 14.

so long as 'the circumstances, viewed objectively, justify' the arrest.  That is, an arrest is lawful as long as probable cause exists for *some* offense."  *Morris v. Noe*, 672 F.3d 1185, 1192–93 (10th Cir. 2012) (citations and quotations omitted, emphasis in original).

Trooper Terry had probable cause to arrest Plaintiff for three offenses.  First, Utah's DUI statute criminalizes the operation of a vehicle if the person "is under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle."  Utah Code Ann. § 41-6a-502.  The Supreme Court has held that probable cause to arrest for DUI exists where an officer "smells liquor" on the driver's breath and observes bloodshot, watery, and glassy eyes.  *Schmerber v. California*, 384 U.S. 757, 769, 86 S. Ct. 1826 (1966).  The Tenth Circuit has repeatedly held that facts like those in this case present sufficient probable cause to arrest a suspect for driving under the influence.  *See U.S. v. Chavez*, 660 F.3d 11215, 1224 (10th Cir. 2011) (officer had probable cause to arrest for DUI where an officer observed the motorist to have bloodshot and watery eyes, detected alcohol emanating from the person, the person admitted to drinking and fails field sobriety tests); *Wilder*, 490 F.3d at 816 (officer had probable cause to arrest where officer observed a moderate odor of alcohol, pinkish and watery eyes, unusually slow and deliberate speech, and slow hand movements" together with a refusal "to participate in field sobriety tests.");  *Summers v. State of Utah,* 927 F.2d 1165 at 1166 (10th Cir. 1991) (officer had probable cause to arrest suspect for DUI where officer observed operation of vehicle, smelled alcohol emanating from the vehicle and the suspect refused to take field sobriety tests).

In this case, Trooper Terry smelled the odor of burnt marijuana,[56] Plaintiff admitted to possessing and smoking marijuana within twenty-four hours,[57] and performed poorly on field sobriety tests.[58]  Plaintiff also admitted to taking Oxycontin earlier in the day and Percocet less than two hours before the stop.[59]  Under the circumstances, a reasonable officer would have probable cause to believe Plaintiff was in violation of  Utah's DUI statute.

Second, Trooper Terry also had probable cause to arrest Plaintiff for misdemeanor possession of marijuana.  Utah law in effect at the time of Plaintiff's arrest criminalized possession of any quantity of marijuana.  Utah Code Ann § 58-37-8(2)(D).  Plaintiff personally handed Trooper Terry a burnt marijuana joint[60] and Plaintiff acknowledged that it was his.[61]  A reasonable officer would conclude that there was probable cause to arrest Plaintiff for that crime.

Third, although Trooper Terry did not cite Plaintiff under Utah's "metabolite statute" he had probable cause to do so.  Utah statute provides:  "In cases not amounting to a violation of Section 41-6a-502, a person may not operate or be in actual physical control of a motor vehicle within this state if the person has any measurable controlled substance or metabolite of a controlled substance in the person's body."  Utah Code Ann. § 41-6a-517.  Impairment is not an element of this offense.  *State v. Outzen*, 408 P.3d 334, 339 (Utah 2017).  "A person who has introduced a measurable controlled substance into his or her system and then chooses to drive is in violation of section 41-6a-517."  *Id.* at 339.  "[T]o the extent that violation of section 41-6a-

---

[56] Ex. 1, Dash-Cam Video 11:15:45; Ex. 2, Police Report, Bates No. 000005.

[57] Ex. 1, 11:20:12.

[58]  *Id.* at 11:32:15

[59] *Id.* at 11:26:05.

[60] *Id.* at 11:19:15; Ex. 2, Police Report, Bates Nos. 000005, 9, 15.

[61] Ex. 1, Dash-Cam Video, 11:20:12.

517 rises to a level of impairment, the "not amounting to" clause allows an individual to be charged under either statute--it does not limit the applicability of section 41-6a-517." *Id.*

Plaintiff's arguments concerning his arrest[62] rely on his assertions that Trooper Terry frightened him into admitting his drug use,[63] forced him to do FSTs,[64] and that the FSTs did not show indicia of impairment.[65]  These assertions are objectively false.  Trooper Terry did not threaten or intimidate Plaintiff.  When Trooper Terry asked Plaintiff if he would do the FSTs, Plaintiff's response was: "You betcha!  I'll do anything you want."[66]  He indicated that he had no problem walking in a straight line and he could do the one-legged stand with his right leg.[67] Plaintiff's unsafe exit from the freeway,[68] and his inability to physically perform the FSTs and cognitively follow instructions are indicia of impairment that, taken together with Plaintiff's admissions to using and possessing marijuana and narcotics,[69] furnished Trooper Terry with adequate probable cause to arrest Plaintiff for driving "while under the influence of . . . any drug . . . to a degree that renders the person incapable of safely operating a vehicle."  Utah Code Ann. § 41-6a-502(1)(b).

---

[62] As discussed below, probable cause to arrest Plaintiff for DUI dooms any Fourth Amendment malicious prosecution claim intended by Plaintiff's Complaint.  *Peay v. Utah Cty.,* 2009 WL 3152058 at * 8 (D. Utah Sept. 24, 2009) (unpublished) (citing elements for Fourth Amendment malicious prosecution claim).

[63] Pla.'s Resp. to Defs.' Mot. to Dismiss, p. 3.

[64] *Id.* at p. 4

[65] *Id.* at p. 3.

[66] Ex. 1, Dash-Cam Video, 11:29:37—11:29:42.

[67] *Id.* at 11:33:23-11:37:50.

[68] *Id.* at 11:12:36—11:13:06.

[69] *Id*. at 11:20:12—11:26:05.

Plaintiff also claims that his toxicology results,[70] which were reported nearly a month after the arrest, defeat probable cause.[71]  Probable cause, however, is determined based on the totality of circumstances "known at the time of the arrest."  *U.S. v. Vazquez-Pulido*, 155 F.3d 1213, 1216-17 (10th Cir. 1998).  Plaintiff's anomalous chemical test results, while intriguing given Plaintiff's admitted pharmaceutical history, were not known to Trooper Terry at the time of the arrest and are irrelevant to the question of whether a reasonable officer would believe they had probable cause at the time of the arrest.

Finally, Plaintiff cites no case suggesting that an officer violates clearly established law when the officer arrests and charges a suspect with DUI when the suspect:  (1) Violates a traffic law; (2) Possesses narcotics and marijuana; (3) Admits to recent use of narcotics and marijuana; and (4) Cannot complete basic FSTs.  Plaintiff has not carried his burden of showing that his arrest violated clearly established law and Plaintiff's Fourth Amendment false arrest and malicious prosecution claims should be dismissed with prejudice.[72]

### vii.    False Imprisonment  (Count 7)

Plaintiff's false imprisonment claim fails for the same reason as his false arrest claim-- Trooper Terry had probable cause to arrest him.  False arrest claims arising out of imprisonment prior to the institution of legal process (i.e., prior to arraignment) are analyzed under the Fourth Amendment.  *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008).  The existence of

---

[70] Ex. 2, Police Report, Bates Nos. UHP DEFS 000017-18.

[71] Pla.'s Resp. to Defs.' Mot. to Dismiss, p. 1.

[72] While Plaintiff argues that Trooper Terry did not have probable cause to arrest him for DUI, Plaintiff makes no coherent argument regarding whether Trooper Terry had had probable cause to arrest him for possession of marijuana or metabolite DUI.  Plaintiff's false arrest claim fails if Trooper Terry had probable cause to arrest Plaintiff "*for any offense*, not just the offense cited at the time of arrest or booking."  *Wesby*, 138 S.Ct. at 584, n. 2 (emphasis added).

probable cause to arrest defeats a Fourth Amendment false imprisonment claim.  *Puller v. Baca*, 781 F.3d 1190, 1200 (10th Cir. 2015).  *See also Smith v. Barber* 316 F. Supp.2d 992 (D. Kan. 2004) ("A false arrest claim will fail where probable cause exists for at least one of the charges against a plaintiff in a § 1983 case.")  As discussed above, Trooper Terry had probable cause to arrest Plaintiff for three crimes.  Plaintiff's false imprisonment claim accordingly should be dismissed with prejudice.

### viii.    Malicious Prosecution (Count 1)

Plaintiff alleges that Trooper Terry's police report contains perjurious statements.[73]  False statements in a police report do not give rise to an independent claim under § 1983, but concealment and misrepresentation of material facts to the prosecuting attorney may form the basis of a malicious prosecution claim under the Fourth Amendment.  *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004).  "A successful claim for malicious prosecution [ ] requires: (1) [a] criminal proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the accused; (3) absence of probable cause for the proceeding; and (4) malice, or a primary purpose other than that of bringing an offender to justice."  *Peay*, 2009 WL 3152058, at *8 (quoting *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 959 (Utah Ct.App.1989)).

 The plaintiff bears the burden of showing a favorable termination.  *Wilkins v. DeReyes*, 528 F.3d 790, 803 (10th Cir. 2008).  "To count as favorable, the termination must in some way indicate the innocence of the accused."  *Margheim v. Buljko*, 855 F.3d 1077 at 1089 (10th Cir. 2017).  "Where the case is disposed of in a manner that leaves the question of the accused's

---

[73] Pla.'s Compl., ¶ 13.

innocence unresolved, there generally can be no malicious prosecution claim by the accused." *M.G. v. Young*, 826 F.3d 1259, 1262 (10th Cir. 2016). "The malice element required for a malicious prosecution claim requires that criminal proceedings are initiated primarily for a 'purpose other than that of bringing an offender to justice.'" *Peay*, 2009 WL 3152058 at * 8. (quoting *Schettler*, 768 P.2d at 959 (Utah Ct. App. 1989).

Plaintiff's Amended Complaint fails to state a malicious prosecution claim. First, the alleged inconsistencies between the police report and the dash-cam video are immaterial and do not vitiate probable cause. Second, while Plaintiff generically avers his innocence,[74] his Amended Complaint pleads no facts that show a criminal prosecution that terminated in his favor as a matter of law. Third, any malicious prosecution claim is undone by the probable cause to arrest him. Finally, beyond Plaintiff's conclusory allegations, Plaintiff has not alleged that Trooper Terry arrested him for a purpose other than bringing Plaintiff to justice. Any Fourth Amendment malicious prosecution claim implied in Plaintiff's Amended Complaint should be dismissed, with prejudice.

### ix.    Excessive Force (Count 9)

While Plaintiff alleges that Trooper Terry violated his due process rights under the Fourteenth Amendment when he transported Plaintiff in the backseat of his K-9 Unit, the Tenth Circuit has "held that the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from "treatment of [an] arrestee detained without a *warrant* " and "*prior to* any probable cause hearing." *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (emphasis in original) (citations and quotations omitted). The elements of such a claim are: "(1) that the

---

[74] *Id.* at ¶¶ 18, 19.

officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (citations and quotations omitted).  No Fourth Amendment excessive force violation occurs when the force applied was "objectively reasonable in light of the facts and circumstances confronting [the officer]." *Id.*  Officers are not required to *"*use the least intrusive means in the course of a detention." *Id.*  Where a plaintiff alleges that the detention causes pain, the plaintiff must make a contemporaneous complaint to the arresting officer of pain or exacerbation of injury. *Id.* at 896.  A lawful arrest, where one is handcuffed, placed in a patrol car, and taken to jail, does not violate the Fourth Amendment.  *Atwater*, 532 U.S. at 354-55 (2001).

The dash-cam video documents Plaintiff's arrest and transport to jail in Trooper Terry's vehicle when the alleged excessive force occurred.  When Trooper Terry went to place Plaintiff into his vehicle Plaintiff asked, "Can I get in on the other side?"  Trooper Terry replied, "No, the dog is on the other side."[75]  Before leaving the scene for the jail, Plaintiff asked, "can we get going so I can stretch my leg out? I have a very bad knee."[76]  Plaintiff then asked if he could sit sideways and indicated "I can't sit like this." Trooper Terry accommodated this request.[77]  Later Trooper Terry told Plaintiff, "let's get going so we can get you out of here," indicated the ride to the jail will take approximately fifteen minutes, and advised Plaintiff to "put your hands in."[78]  Plaintiff made no request for a different vehicle nor did he complain that he could not sit in the

---

[75] Ex. 1, Dash-Cam Video, 11:44:35

[76] *Id.* at 11:48:45.

[77] *Id.*

[78] *Id.* at 11:57:49.

vehicle for the fifteen-minute ride to the jail.  Trooper Terry's actions in detaining Plaintiff and transporting him to jail deployed no more force than reasonably necessary to transport Plaintiff to jail, were objectively reasonable, and did not violate the Fourth Amendment.

Finally, Plaintiff has again failed to carry his burden of showing that Trooper Terry's transport of Plaintiff in his vehicle violated clearly established law.  None of the cases cited by Plaintiff hold that an officer "acting under similar circumstances [as Trooper Terry]" violates the Fourth Amendment."  *Nosewicz v. Janosko*, 754 Fed. Appx. 725, 731 (10th Cir. 2018).  Plaintiff's excessive force claim should be dismissed with prejudice.

### x.      Denial of Medical Care Claims (Count 12)

Plaintiff's Complaint fails to state a claim for denial of medical care.  "'Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'"[79]  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "'Deliberate indifference' involves both an objective and a subjective component."  *Id.*   The objective component is met if the deprivation is "sufficiently serious."  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999).  "Delay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."  *Sealock v. Colorado,*

---

[79] The Tenth Circuit has recognized that pre-trial detainee's rights to medical care under the Fourteenth Amendment are the same as a convicted prisoner's rights under the Eighth Amendment.  *Crocker v. Glanz*, 752 Fed App'x. 564, 566 (10th Cir. September 24, 2018) (citing *Estate of Booker,* 745 P.3d at 429).

218 F.3d 1205, 1210 (10th Cir 2000).  The "substantial harm requirement can be met by showing "lifelong handicap, permanent loss, or considerable pain."  *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).  The fact that a prisoner has been prescribed pain medication, standing alone is insufficient to establish that a prisoner's untreated pain is severe enough to constitute substantial harm.  *Beers v. Ballard*, 248 Fed. Appx. 988, 932 (10th Cir. 2007).  "[N]ot every twinge of pain suffered as the result of delay in medical care is actionable."  *Sealock,* 218 F.3d at 1210.  The Tenth Circuit has held that a three-hour delay in administration of pain medication for a broken ankle, where the state official withheld the medication because he believed surgery for the broken ankle was imminent, did not violate the Eighth Amendment.  *Lane v. Klingler*, 25 Fed.Appx. 781 (10th Cir. 2001).

The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."  *Farmer,* 511 U.S. at 837.  "In measuring a prison official's state of mind, "the official must be both aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference."  *Martinez*, 430 F.3d at 1304 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

In this case, Plaintiff's Amended Complaint fails to plead facts showing a violation of clearly established law.  Trooper Terry smelled burnt marijuana.[80]  Plaintiff admitted to previously smoking marijuana and taking narcotics.[81]  Prior to transporting Plaintiff to jail, Trooper Terry and Washington County Deputy Brad Coleman, who had arrived at the scene to assist, asked Plaintiff's wife, who was a passenger in the car, whether Plaintiff required any

---

[80] Ex. 1, Dash-Cam Video at 11:15:45.

[81] *Id.* at 11:20:12; 11:26:05.

immediate medication.[82]  Plaintiff's wife said he did, but when she offered it to Trooper Terry, Coleman indicated the jail would not accept narcotic medication for liability purposes and would dispose of the medication.[83]  Coleman explained that the jail staff would evaluate Plaintiff and provide him with a non-narcotic pain reliever.  Coleman advised Plaintiff's wife that she could keep the prescription painkillers with her and give Plaintiff one when he was released.[84]  Shortly thereafter, Plaintiff, who was under arrest for DUI but had not yet submitted a blood sample, again demanded his narcotic pain medication.[85]  Trooper Terry denied this request.[86]  Plaintiff has failed to show that Trooper Terry's refusal to give Plaintiff  his opioid medication, when Plaintiff was under arrest and awaiting blood testing for a drug-related DUI, violates clearly established law.  None of the cases cited by Plaintiff deal with circumstances similar to those present here.[87]  Plaintiff's denial of medical care claim should be dismissed with prejudice.

## IV.  Plaintiff's Remaining Claims Fail Rule 8's "Short and Plain Statement" Requirement and are Subject to Dismissal.

The Court rejects any remaining claims in Plaintiff's Amended Complaint because the Amended Complaint fails the pleading requirements found in Rule 8 of the Federal Rules of Civil Procedure.  Rule 8 requires a complaint contain a "short and plain" statement, showing that the plaintiff is "entitled to relief."  Fed. R. Civ. P. 8(a).  Additionally, the rule also requires that each allegation made in the complaint "be simple, concise, and direct."  Fed. R. Civ. P. 8, (d).

---

[82] *Id.* 11:45:12.

[83] *Id.*

[84] *Id.*

[85] *Id.* at 11:51:23

[86] *Id.*

[87] Pla.'s Resp. to Defs.' Mot. to Dismiss, p. 16.

"Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8." *Strege v. McDonalds*, 2013 WL 5890575, at *1 (D. Colo. Nov. 4, 2013) (unpublished). Finally, extended citations to case law and statutes are unnecessary in an initial complaint. *Custard v. Lappin*, 2007 WL 1549028 at * 1 (D. Colo. May 25, 2007) (unpublished).

In this case, the Court recommends dismissing Plaintiff's Amended Complaint for failure to comply with Rule 8. The Complaint runs 21 pages, single-spaced. Very little of the Complaint actually states what happened to him. Rather, he densely populates each allegation with voluminous and redundant citations to cases, statutes, and various treaties and numerous exhibits (which he failed to attach). While Defendants and the Court have endeavored to identify all of his possible claims and respond to them, Plaintiff's inclusion of prolix, non-factual material, without explanation of its significance, is neither necessary nor helpful, and makes a complete response to his allegations virtually impossible. Further, the vast bulk of the statutes and treaties cited do not provide Plaintiff with a cause of action.[88] A complaint of this nature violates Rule 8. Plaintiff's remaining claims, if any, should be dismissed without prejudice.

---

[88] "Criminal offenses do not in and of themselves give rise to enforceable civil rights claims unless the criminal statutes in question create privately enforceable rights." STEINBERG V. ALLEN, 979 F.2D 858 (10TH CIR. 1992).

## RECOMMENDATION

For the reasons set forth herein, the court hereby recommends to the District Court that Defendants' Motions to Dismiss be GRANTED[89] and Plaintiff's Amended Complaint be dismissed as follows:

1. Plaintiff's State-Law Claims should be dismissed with prejudice;

2. Plaintiff's ADA Claims should be dismissed with prejudice;

3. Plaintiff's Fifth, Sixth and Ninth Amendment Claims should be dismissed with prejudice;

4. Plaintiff's Fourth Amendment Claims for the search of his vehicle should be dismissed with prejudice;

5. Plaintiff's false arrest claims should be dismissed with prejudice;

6. Plaintiff's false imprisonment claims should be dismissed with prejudice;

7. Plaintiff's malicious prosecution claims should be dismissed with prejudice;

8. Plaintiff's excessive force claims should be dismissed with prejudice;

9. Plaintiff's denial of medical care claims should be dismissed with prejudice;

10. Plaintiff's official capacity § 1983 claims should be dismissed without prejudice;

11. Plaintiff's Conspiracy claims should be dismissed without prejudice;

12. Plaintiff's First and Second Amendment claims should be dismissed without prejudice; and

---

[89] Also pending before the Court is Plaintiff's Motion to the Court for a Rule 35 Medical Examination of Plaintiff (ECF 89). This motion should be denied without prejudice as moot.

13. Any remaining claims asserted in Plaintiff's Amended Complaint should be dismissed without prejudice for violations of Rule 8.

Copies of the foregoing Report and Recommendation shall be sent to all parties who are hereby notified of their right to object.  Within fourteen (14) days of being served with a signed copy of the Report and Recommendation, any party may serve and file written objections. Failure to object may constitute a waiver of objections upon subsequent review.  See Fed. R. Civ. P. 72(b) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.")

Signed December 27, 2019.

BY THE COURT:

Paul Kohler
United States Magistrate Judge

29