IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARRY WATSON,<br><br>                   Plaintiff,<br><br>v.<br><br>UTAH HIGHWAY PATROL, et al.,<br><br>                   Defendants. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 4:18-cv-57-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Larry Watson filed an objection[1] to Judge Kohler's December 27, 2019 Report and Recommendation ("R&R")[2] that Defendants' Motions to Dismiss[3] be granted. Defendants have responded, "urg[ing] the Court to adopt the [R&R] for the reasons stated therein."[4] As explained below, the R&R is ADOPTED.

**Review of Magistrate Judge's Recommendations**

Pursuant to Rule 72, Fed. R. Civ. P., when a magistrate judge makes recommendations as to dispositive motions, "[t]he district judge must determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to. The district judge may accept,

---

[1] Watson's Reply to Court [G]ranting D[e]fense's Motion to Dismiss ("Objection"), docket no. 100, filed January 23, 2020.

[2] Docket no. 95, filed December 27, 2019.

[3] Defendants' Motion to Dismiss, docket no. 28, filed December 19, 2018; Plaintiff's Response to Defendants' Motion to Dismiss ("Opposition"), docket no. 60, filed March 13, 2019; Reply to Plaintiff's Response to Defendants' Motion to Dismiss, docket no. 61, filed March 27, 2019; Defendant Dan Ferguson's Motion to Dismiss, docket no. 79, filed April 22, 2019. Defendant Ferguson's Motion to Dismiss does not make any new arguments to support dismissal, but incorporates the arguments made in support of the December 19, 2018 motion. A footnote in the December 19, 2018 motion stated that the arguments there applied equally to Defendant Ferguson, but that he had "not waived service, nor ha[d] a return of service been filed indicating proper service upon him." Defendants' Motion to Dismiss at 1 n.1.

[4] Defendants['] Response to Plaintiff's Objections to Magistrate's Report and Recommendation at 2, docket no. 101, filed February 7, 2020.

reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[5] "In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."[6] Apart from timely objections, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."[7]

**CONTENTS**

| | | |
|---|---|---|
| II. | State-Law Claims | 3 |
| III. | ADA Claim | 4 |
| IV. | Federal Constitutional Claims | 8 |
| | A. Conspiracy Claims | 9 |
| | B. First and Second Amendment Violations | 9 |
| | C. *Miranda* Violation | 9 |
| | D. Sixth and Ninth Amendments | 10 |
| | E. Search of Vehicle | 10 |
| | F. False Arrest and False Imprisonment | 12 |
| | G. Malicious Prosecution | 12 |
| | H. Excessive Force | 13 |
| | I. Denial of Medical Care Claim | 14 |
| V. | Failure to Satisfy Fed. R. Civ. P. 8's "Short and Plain Statement" Requirement | 14 |
| VI. | ORDER | 14 |

**Watson's Claims and Objections to Recommended Disposition**

This case arises from a traffic stop for a safety infraction that escalated into a drug investigation and ultimately a DUI arrest. In his amended complaint,[8] the arrestee (Watson) asserts 17 "counts," or claims for relief for a multitude of alleged violations of his rights under various federal and state constitutional provisions, statutes, international treaties, and judicial

---

[5] Fed. R. Civ. P. 72(b)(3).

[6] *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted).

[7] Fed. R. Civ. P. 72, Advisory Committee Notes.

[8] Civil Rights Complaint ("Amended Complaint"), docket no. 21, filed November 21, 2018.

decisions. The R&R categorizes and sub-categorizes these claims and recommends dismissing all of them for failure to state a claim.

## I. State-Law Claims

First, Judge Kohler recommended that all of Watson's state-law claims (including claims for negligent and intentional infliction of emotional distress,[9] defamation,[10] and kidnapping,[11] and a number of alleged violations of the Utah Constitution)[12] be dismissed as time-barred.[13]

Regarding this recommendation, Watson does not dispute that traditional application of the relevant limitations provisions would bar his claims, as Judge Kohler explained.[14] Rather, he asserts that applying limitations provisions in this case violates the open courts clause of the Utah Constitution.[15] Because this unsupported argument does not overcome the presumption of constitutionality,[16] Judge Kohler correctly rejected it.

Watson also maintains that he "was injured so severely by Terry's lies and actions that he could not file a [complaint] within the time given,"[17] and that "[t]he 'Discovery Rule Exception', which Utah Courts' [sic] have accepted as an exception to the statute of limitations, is proper and

---

[9] *Id*. (Count 3). The Amended Complaint is cited by Judge Kohler and herein with reference to the page numbers given by the court's Case Management/Electronic Case Files system.

[10] *Id*. (Count 8).

[11] *Id*. (Count 11).

[12] *Id*. (portions of Counts 1-2, 4, 6, 7-8, 11, 13-17).

[13] R&R, *supra* note 2, at 4-6 (recommending that state-law tort claims be dismissed as untimely under the Governmental Immunity Act, Utah Code Ann. §§ 63G-7-401, *et seq*., and that claims for violations of the Utah Constitution be dismissed as untimely under Utah Code Ann. § 78B-2-304(1)).

[14] *Id*.; Objection, *supra* note 1, at 6.

[15] Objection, *supra* note 1, at 6, 10.

[16] *Amundsen v. Univ. of Utah*, 448 P.3d 1224, 1234-36 (Utah 2019) (rejecting unsupported argument that dismissal of action for failure to give timely notice of claim violated open courts provision of the Utah Constitution).

[17] Objection, *supra* note 1, at 3.

applicable in this case."[18] This conclusory argument was not made before Judge Kohler, so he did not consider it. Arguments made for the first time in an objection to a magistrate report are waived.[19] Watson provides no support for his assertion that, while he filed a notice of claim in March 2016, he was unable to file a complaint a year later. In addition, his argument must fail because the Complaint belies Watson's failure to "discover" his claims.[20] He alleges that during the arrest, "UHP Terry knew he was placing enormous stress and pressure on and causing additional injury to Plaintiff's fused spine and damaged nerves yet chose to continue hurting him in spite of Plaintiff's clear verbal concerns and warnings."[21] Judge Kohler's recommendation is adopted as to the state-law claims.

## II. ADA Claim

Judge Kohler also recommended dismissal of Watson's ADA claim,[22] saying that (1) Terry cannot be sued individually under the ADA,[23] and (2) Watson has not sufficiently alleged a claim for failure to make a reasonable accommodation.[24]

Regarding the first of these recommendations, "Watson concedes on this point,"[25] but argues that "he should be allowed to add [the Utah Highway Patrol] back in [as a defendant] as

---

[18] *Id*. at 7.

[19] *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.") (citation omitted).

[20] "The discovery rule is applicable when it is mandated by statute, when a defendant has concealed a plaintiff's cause of action, or when exceptional circumstances exist." *Hill v. Allred*, 28 P.3d 1271, 1275 (Utah 2001) (citing *Williams v. Howard*, 970 P.2d 1282, 1285 (Utah 1998)).

[21] Complaint ¶ 36, docket no. 1, filed September 6, 2018..

[22] Amended Complaint, *supra* note 8 (Count 10).

[23] R&R, *supra* note 2, at 6-7 (citing, among other cases, *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015); *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999)).

[24] *Id*. at 7-8.

[25] Objection, *supra* note 1, at 11.

an ADA violation was committed."[26] Watson has sued Terry in his official capacity (as well as his individual capacity), so he has effectively brought a claim against the UHP. It is therefore unnecessary to add the UHP as a separate defendant if Watson has adequately alleged failure to make a reasonable accommodation.

Watson describes himself (as of the time of the stop) as a 220-pound man standing at 6' 4," "with severe, intractable and chronic pain, a fused (in-three-places) spine with two new (replaced) discs and massive nerve damage."[27] He says that when he was arrested, he was entitled to a reasonable accommodation in the form of transportation to the jail in the "full-sized police vehicle" that was present at the scene, rather than in Terry's "much-too-small K-9 unit's tiny back seat."[28]

Judge Kohler determined that the dash cam video[29] showed that Terry was not on notice of the need for this accommodation, as would be required for his ADA claim to succeed.[30] Knowledge of the need for an accommodation "may derive from an individual's request for an accommodation" or "because it is obvious."[31] Watson objects on the ground that he explained his mining accident, showed Terry scars on his back, and described his surgeries, saying that these facts gave Terry knowledge of his disability (which is not at issue). He further asserts that

---

[26] *Id.*

[27] Amended Complaint, *supra* note 8 (Count 10).

[28] *Id.*

[29] The dash cam video is identified as an exhibit to the Amended Complaint, see Amended Complaint, *supra* note 8, at 4, and may therefore be considered in deciding the motions to dismiss. *Montoya v. Vigil*, 898 F.3d 1056, 1060 n.2 (10th Cir. 2018) (in deciding 12(b)(6) motion, court may consider video attached to complaint).

[30] R&R, *supra* note 2, at 7-8; *J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015) ("If a police officer incurs a duty to reasonably accommodate a person's disability during an arrest, this duty would have arisen only if [the officer] had known that [the arrestee] needed an accommodation.") (citing *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007)).

[31] *Robertson*, 500 F.3d at 1197 (citations and quotation marks omitted); *Windham v. Harris Cty., Texas*, 875 F.3d 229, 236–37 (5th Cir. 2017) (recognizing same in traffic stop context).

he requested to be moved, and complained that the seat in Terry's vehicle was too small and was hurting him.[32]

As Judge Kohler partially explained, the video clearly contradicts Watson's account regarding notice. First, upon being placed under arrest, Watson requested to be handcuffed in front of his body, which Terry immediately allowed, stating that he did not want to cause him further pain.[33] Watson was then directed to sit in Terry's vehicle, which Terry recognized would be "kind of a tight squeeze" for Watson.[34] At that time, Watson asked if he could sit on the other side (where there was apparently more room) based on his "terrible left knee," but Terry denied this request, saying that the other side was occupied by his dog.[35] After approximately five minutes, Terry asked him if he was "doing okay back here."[36] Watson responded, "Yeah, but can we get going or let me at least stretch my leg out cuz I have a very bad left knee, man."[37] He continued, saying that he could also sit sideways (presumably so that his bad knee would not be against the seat in front of him), and he would "sit right here, just quiet as a church mouse," but that he couldn't "sit like this."[38] After hearing this, Terry allowed him to step out of the vehicle for several minutes prior to departure for the jail.[39] He then told Watson it was time to go, saying, "Okay, Larry, let's get going so we can get you out of there," placed Watson back in the vehicle, and informed him that the trip would take about 15 minutes.[40] As he stepped back into

---

[32] Amended Complaint, *supra* note 8, at 11-13; Objection, *supra* note 1, at 11-12.

[33] Defendants' Motion to Dismiss, *supra* note 3, Exhibit 1 at 11:40:30-11:41:20.

[34] *Id.* at 11:44:28-11:44:40.

[35] *Id.*

[36] *Id.* at 11:48:40-11:48:45.

[37] *Id.* at 11:48:45-11:48:50.

[38] *Id.* at 11:48:50-11:48:56.

[39] *Id.* at 11:48:57-11:57:20.

[40] *Id.* at 11:57:20-11:57:35.

the vehicle, Watson gave an audible exclamation of pain,[41] but he said nothing about its cause and suggested nothing about the need to change his seating arrangement. Rather, he complained about being arrested, saying, "You know you didn't have to do this," and reiterated his belief that Terry had not smelled marijuana.[42]

As the above summary of the video demonstrates, at no point did Watson advise Terry that the 15-minute trip in the small seat would present complications for his back, which is the disability in question. Although Watson says that he repeatedly told Terry the seat was hurting him, and that he wanted to be moved, the video "clearly contradict[s] [these] allegations . . . ."[43] Rather, he initially requested to sit on the other side of the vehicle, where there was apparently more room, based on his "terrible left knee." When Terry denied this request, saying that the other side of the vehicle was occupied by his dog, Watson took the seat he was given. About five minutes later, when Terry asked him if he was "doing okay back [there]," *he responded affirmatively*, but requested that they "get going" or that he be permitted to get out to stretch his leg because he had "a very bad left knee." He also said that he could sit sideways "*right here*" but that he could not "sit *like this*." In other words, Watson gave Terry every reason to think that, notwithstanding his "tight" seating arrangement, if they left promptly or he was given the chance to stretch his leg or he was permitted to sit sideways, he could sit in the very place he now says Terry knew he could not safely sit.

In response, Terry gave him exactly what he asked for. He allowed Watson to get out of the vehicle and stretch his leg for several minutes, and then they "[got] going" to the jail, as

---

[41] *Id.* at 11:57:35-11:57:40.

[42] *Id.* at 11:57:40-11:57:50.

[43] *Myers v. Brewer*, 773 Fed. Appx. 1032, 1036 (10th Cir. 2019) (unpublished) (affirming denial of motion to dismiss excessive force claim where video did not clearly contradict allegations of complaint), cert. denied, 140 S. Ct. 848, 205 L. Ed. 2d 467 (2020).

Watson had suggested would be okay. Watson cried out with pain when he was getting back in the vehicle, but he said nothing indicating that it had anything to do with his seat, or that his prior statements about being able to sit there for the trip to the jail were incorrect. Nor has he alleged that Terry did not permit him to sit sideways as he (Watson) had expressly indicated would be fine.[44] Based on these exchanges and omissions captured by the video, Watson cannot plausibly claim now that Terry knew he needed to ride in another vehicle. He neither requested that accommodation nor, in light of his own statements indicating he could ride in the seat Terry gave him, was it obvious.[45] Thus, the ADA claim will be dismissed.

### III. Federal Constitutional Claims

Judge Kohler determined that Eleventh Amendment immunity barred all of Watson's official capacity claims for federal civil rights violations[46] because Watson did not plead any ongoing violations of his rights.[47] Watson's objection regarding this point does not address this determination, but merely sets forth Watson's reasons for disputing Terry's assertion that he smelled marijuana. The objection is overruled as irrelevant.

Judge Kohler further determined that Defendants are shielded by qualified immunity as to all of the individual Section 1983 claims. These claims are discussed below.

---

[44] Again, the reasonable accommodation Watson says he should have been given is a ride in a larger vehicle, not a different position in his seat.

[45] *Robertson*, 500 F.3d at 1197 (recognizing that knowledge of need for accommodation "may derive from an individual's request for an accommodation" or "because it is obvious") (citations and quotation marks omitted).

[46] Amended Complaint, *supra* note 8 (All Counts).

[47] R&R, *supra* note 2, at 8-9; *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012) ("The Eleventh Amendment bars suits for damages and other forms of relief against state defendants acting in their official capacities," except where a "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (citations omitted).

### A.     Conspiracy Claims

Judge Kohler determined that the conspiracy claims[48] failed because (1) there are insufficient facts pled to show an agreement and concerted action to deprive Watson of his rights,[49] and (2) there is no allegation of racial or class-based invidious discriminatory animus underlying the alleged conspiracy.[50] Watson does not address the case law cited by Judge Kohler or demonstrate that Judge Kohler's application of it is incorrect. The conspiracy claims will be dismissed.

### B.     First and Second Amendment Violations

Judge Kohler determined that the claims for violations of the First and Second Amendment[51] were not supported by any factual allegations that could make them plausible.[52] Watson has not shown that this determination was erroneous. These claims will be dismissed.

### C.     *Miranda* Violation

Judge Kohler determined that Watson's claim based on an alleged violation of his *Miranda* rights[53] should be dismissed with prejudice.[54] He noted case law holding, and Watson's

---

[48] Amended Complaint, *supra* note 8 (Counts 14-17).

[49] R&R, *supra* note 2, at 11-12; *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (in order to state valid § 1983 conspiracy claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants," not merely "[c]onclusory allegations of conspiracy").

[50] *Id.*; *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (§ 1985(3) applies "only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus"); *Smith v. Yellow Freight Sys., Inc.*, 536 F.2d 1320, 1323 (10th Cir. 1976) (§ 1985(2) conspiracy claim subject to same limitation).

[51] Amended Complaint, *supra* note 8 (Counts 1, 2, 4, 8, 14-17).

[52] R&R, *supra* note 2, at 13.

[53] Amended Complaint, *supra* note 8 (Count 5).

[54] R&R, *supra* note 2, at 13.

concession, that a *Miranda* violation does not give rise to an actionable claim.[55] Watson has not shown error, so the claim will be dismissed.

### D. Sixth and Ninth Amendments

Judge Kohler determined that Watson's claims for violations of the Sixth and Ninth Amendments[56] are frivolous and should be dismissed with prejudice.[57] Watson concedes this point.[58] These claims will be dismissed.

### E. Search of Vehicle

Relying on the dash cam video of the stop, Judge Kohler determined that Watson's claim for an unconstitutional search[59] fails because Terry "smelled the odor of burnt marijuana emanating from [Watson's] vehicle,"[60] and because Watson "handed Terry a burnt marijuana joint upon exiting the car and prior to Trooper Terry's search of the vehicle."[61]

The video establishes the following sequence of events: (1) that, within the first two minutes of the initial encounter at Watson's vehicle, Terry reported that he smelled marijuana;[62] (2) that Watson denied that the vehicle smelled of marijuana, saying that Terry was smelling "my dog's butt" because "whenever we travel, he gets this smell" that "doesn't smell like pot – it just

---

[55] *Id.*; *Haulman v. Jefferson Cty. Sherrif Office*, 15 Fed. Appx. 720, 721 (10th Cir. 2001) (unpublished) ("[T]he law in this circuit is clear that the only remedy available for a *Miranda* violation is the suppression of any incriminating evidence.") (citing *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976)).

[56] Amended Complaint, *supra* note 8 (Counts 8-10, 13-17).

[57] R&R, *supra* note 2, at 13-14.

[58] Objection, *supra* note 1, at 19.

[59] Amended Complaint, *supra* note 8 (Count 4).

[60] R&R, *supra* note 2, at 14.

[61] *Id.*

[62] Defendants' Motion to Dismiss, *supra* note 3, Exhibit 1 at 11:15:45-11:15:55.

smells like butt;"[63] (3) that Terry insisted he could smell marijuana;[64] (4) that Watson again denied that the vehicle smelled of marijuana;[65] (5) that Terry then said that based on the smell of marijuana he could search the vehicle, and that he had a trained drug-detection dog with him that would "indicate the odor of drugs" if Terry ran him around Watson's vehicle;[66] (6) that Watson responded, "Well, get your dog out then;"[67] (7) that Terry replied that he did not need to get his dog because he could smell marijuana and was therefore going to search the vehicle;[68] (8) that Terry ordered Watson and Watson's wife to step out of the vehicle and warned, "I tell you right now if I find weed in the car and you're lying to me, I'm just going to take you to jail;"[69] (9) that, as he exited the vehicle a couple of minutes later, Watson held a plastic bag and, in response to Terry's question about what it was, said, "My wife says she has a roach in here, but I don't see it. (Pause) Yep, right there. She sure does," and handed Terry a bag containing a small marijuana joint;[70] and (10) that Watson subsequently informed Terry that the joint was his, that a doctor had told him he could smoke marijuana, and that he had smoked marijuana the night before.[71]

Trooper Terry twice told Watson that Terry smelled marijuana at the start of their discussion. And the video, referenced many times in the complaint, demonstrates that Watson handed a joint to Terry and admitted that he had smoked marijuana the night before. All this

---

[63] *Id.* at 11:15: 55-11:16:11.

[64] *Id.* at 11:16:11-11:16:14.

[65] *Id.* at 11:16:15-11:16:16.

[66] *Id.* at 11:16:17-11:16:36.

[67] *Id.* at 11:16:37-11:16:39.

[68] *Id.* at 11:16:40-11:16:52.

[69] *Id.* at 11:17:00-11:17:10.

[70] *Id.* at 11:19:09-11:19:24. The video does not show what was in the bag, but Terry described it in his police report as a "marijuana joint," and Watson does not dispute that is what it was. Defendants' Motion to Dismiss, Exhibit 2 at 11-12 (Bates No. UHP DEFS 000010-000011); Opposition, *supra* note 3, at 2; Objection, *supra* note 1, at 22.

[71] *Id.* at 11:20:10-11:20:30.

happened before any search of the vehicle. Watson has failed to show any basis for the unconstitutionality of the search. The unlawful search claim will be dismissed.

### F. False Arrest and False Imprisonment

Judge Kohler determined that Watson's claims for false arrest[72] and false imprisonment[73] fail due to the existence of probable cause to arrest him for three different offenses (violation of Utah DUI law, possession of marijuana, and having marijuana metabolite in his system). This probable cause determination is based on (1) Terry's detection of "the odor of burnt marijuana," (2) Watson's surrender of "a burnt marijuana joint," (3) Watson's "admissions to using and possessing marijuana and narcotics," and (4) his poor performance on field sobriety tests.[74] Judge Kohler's recommendation to dismiss the false arrest and false imprisonment claims is adopted.

### G. Malicious Prosecution

Judge Kohler determined that any malicious prosecution claim[75] fails because (1) "the alleged inconsistencies between the police report and the dash-cam video are immaterial and do not vitiate probable cause;" (2) Watson does not allege that a criminal proceeding instituted against him terminated in his favor; (3) there was probable cause to arrest him; and (4) Watson

---

[72] Amended Complaint, *supra* note 8 (Count 6).

[73] *Id.* (Count 7).

[74] R&R, *supra* note 2, at 18-21.

[75] Amended Complaint, *supra* note 8 (Count 1). The Amended Complaint does not use the term "malicious prosecution," but asserts that various statements included by Terry in his police report amount to "perjury." *Id.* ¶ 13. Judge Kohler apparently construed this and other allegations as an attempt to state a malicious prosecution claim. R&R, *supra* note 2, at 21. "A successful claim for malicious prosecution in Utah requires (1) [a] criminal proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the accused; (3) absence of probable cause for the proceeding; and (4) malice, or a primary purpose other than that of bringing an offender to justice." *Peay v. Utah Cty.*, No. 2:05-CV-1083, 2009 WL 3152058, at *8 (D. Utah Sept. 24, 2009) (quoting *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 959 (Utah Ct. App. 1989)) (other citation omitted).

has only alleged malice in conclusory terms.[76] As already indicated, the first and third reasons given are sufficient. Regarding the second, as Judge Kohler indicated, the Amended Complaint does not allege that a criminal proceeding terminated in Watson's favor. Watson points to an exhibit consisting of a minute entry from the Washington County Justice Court showing that a criminal case against him was dismissed on the prosecution's motion.[77] But even if this exhibit were considered as part of Watson's pleading, it does not state the reason for the dismissal or indicate that the dismissal was made with prejudice. Nor has he identified the charges brought against him in that court. Thus, as Judge Kohler determined, Watson has not alleged sufficient facts to show that the dismissal "in some way indicate[s] the innocence of the accused."[78] This claim will be dismissed.

### H.     Excessive Force

Judge Kohler determined that the excessive force claim[79] fails because, under the circumstances shown by the dash cam video, "Terry's actions in detaining [Watson] and transporting him to jail deployed no more force than reasonably necessary to transport [Watson] to jail, were objectively reasonable, and did not violate the Fourth Amendment."[80] Based on the

---

[76] R&R, *supra* note 2, at 21-22.

[77] Opposition, *supra* note 3, Exhibit 27, filed conventionally, see docket no. 46, filed February 4, 2019.

[78] *Margheim v. Buljko*, 855 F.3d 1077, 1089 (10th Cir. 2017) (dismissal following successful defense motion to suppress insufficient to show favorable termination).

[79] Amended Complaint, *supra* note 8 (Count 9). The Amended Complaint identifies this as a due process claim under the 14th Amendment, but Judge Kohler evaluated it under Tenth Circuit case law as a Fourth Amendment excessive force claim. R&R, *supra* note 2, at 22-24. Watson does not challenge this categorization. Objection, *supra* note 1, at 22-23.

[80] R&R, *supra* note 2, at 22-24; *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) ("[T]o recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional.") (citations omitted); *id*. (focus in an excessive force claim is "on whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them") (citation and quotation marks omitted).

video, as previously summarized with regard to Watson's ADA claim,[81] Watson cannot plausibly argue excessive force in connection with his arrest and transport. This claim will be dismissed.

### I.      Denial of Medical Care Claim

Judge Kohler determined that Watson's denial of medical care claim[82] fails because Watson did not "show that Trooper Terry's refusal to give [Watson] his opioid medication, when [Watson] was under arrest and awaiting blood testing for a drug-related DUI, violates clearly established law."[83] Watson has not addressed this determination. Judge Kohler's recommendation to dismiss the medical care claim is adopted.

### IV.     Failure to Satisfy Fed. R. Civ. P. 8's "Short and Plain Statement" Requirement

Judge Kohler determined that any other claims should be dismissed without prejudice based on Watson's failure to satisfy Fed. R. Civ. P. 8's "short and plain statement" requirement.[84] Watson concedes his failure to satisfy this requirement but asks for leave to amend.[85] However, he has already amended his complaint once, and he has not identified any other claim that could be added if he were granted leave to amend again. All other claims are therefore dismissed.

### V.      ORDER

---

[81] Section II, *supra*.

[82] Amended Complaint, *supra* note 8 (Count 12).

[83] R&R, *supra* note 2, at 26.

[84] *Id.* at 26-27; Fed. R. Civ. P. 8(a) (requiring pleading to contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief").

[85] Objection, *supra* note 1, at 1.

For the foregoing reasons, IT IS HEREBY ORDERED that the Report and Recommendation[86] is ADOPTED. Watson's claims are dismissed as follows:

1. Watson's state-law claims are DISMISSED with prejudice.

2. Watson's ADA claims are DISMISSED with prejudice.

3. Watson's official capacity § 1983 claims are DISMISSED without prejudice.

4. Watson's conspiracy claims are DISMISSED without prejudice.

5. Watson's First and Second Amendment claims are DISMISSED without prejudice.

6. Watson's Fifth, Sixth, and Ninth Amendment claims are DISMISSED with prejudice.

7. Watson's Fourth Amendment claims for the search of his vehicle are DISMISSED with prejudice.

8. Watson's false arrest and false imprisonment claims are DISMISSED with prejudice.

9. Watson's malicious prosecution claims are DISMISSED with prejudice.

10. Watson's excessive force claims are DISMISSED with prejudice.

11. Watson's denial of medical care claims are DISMISSED with prejudice.

12. Any remaining claims asserted in Watson's Amended Complaint are DISMISSED without prejudice for violations of Fed. R. Civ. P. 8.

Signed October 21, 2020.

BY THE COURT

David Nuffer
United States District Judge

---

[86] Docket no. 95, filed December 27, 2019.